**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 94-5729

DEREK DION CURTIS, I,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CR-93-150-B)

Submitted: February 6, 1996

Decided: March 6, 1996

Before MURNAGHAN and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert J. Wagner, WAGNER & WAGNER, Richmond, Virginia, for
Appellant. Lynne A. Battaglia, United States Attorney, Carmina S.
Hughes, Assistant United States Attorney, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Derek Dion Curtis appeals from his convictions of and sentence for impersonating a federal officer in violation of 18 U.S.C.A. § 912 (West Supp. 1995), and bank fraud in violation of 18 U.S.C.A. § 1344 (West Supp. 1995). He contends that the trial court erred in determining that the government presented sufficient evidence to prove that he was not a government employee and that the sentencing court erred in attributing over $20,000 of fraudulently obtained property to him. We affirm.

The government presented testimony that a Mrs. Ferguson called a computer store representing Strategic Analysis and Management Systems ("SAMS"), an alleged government agency. Mrs. Ferguson stated that Dr. Derek Curtis would visit the store that afternoon and any equipment selected should be charged to a purchase order number she provided. Curtis went to the computer store and stated that he was an administrator with SAMS, an agency above the FBI which conducts and supervises investigations for Congress. Curtis described his agency as an arm of the Justice Department that did liaison work between Congress and other arms of the Justice Department, the Federal Bureau of Investigations ("FBI"), the Drug Enforcement Administration, and the Secret Service. Curtis selected two pagers to be charged to the purchase order number and represented that the government would pay for the equipment. Curtis later purchased a police scanner, a computer, and a laser printer in the same manner.

Curtis's personal check for the pager's monthly service charge was returned with the notation that the account had been closed. Curtis took another check and some cash to the computer store to make good on the first check. The second check was returned for insufficient funds. Despite Curtis's representation that the government would pay for the equipment, which totalled $4,766.83, no payment was

2

received. The computer store mailed an invoice to SAMS, but the invoice was returned stamped "attempted, not known" indicating that the address was wrong.

Fred Schall, a real estate agent, also received a telephone call from Mrs. Ferguson from SAMS, which she described as a government agency, part of the Office of Congressional Affairs. Mrs. Ferguson informed Schall that an agency employee was looking to rent a house and that the government would pay the entire year's rent and all costs up front. Schall showed Curtis a house, which he agreed to rent. Curtis told Schall that he worked for the Congressional Branch of the government as "an advance man for the congressional affairs," writing reports to keep government officials informed on current affairs. Curtis informed Schall that the Secret Service would have to check the security of the property. On the rental application, Curtis listed Strategic Analysis as his employer for the past five years. Curtis represented that the government would pay the rent for the year and all costs in one lump sum.

Curtis provided several excuses for the delay in payment from the government. At Schall's request, Curtis provided a personal check for the rent due plus a security deposit. This check bounced and, although Curtis called the bank and assured Schall that there were sufficient funds in the account, the check bounced again. Curtis later provided a cashier's check for the rent due. No other payments were received from Curtis or the government. Eventually, eviction proceedings were initiated and Curtis vacated the property.

In purchasing a car, Curtis represented that he worked for Strategic Analysis Management, which was affiliated with the Congressional Affairs Office. On his credit application, Curtis stated that he had been with that agency for nine years and seven months and that his income was $96,500 per year. As a credit reference, Curtis listed a savings account with Justice Department, Federal Credit Union. Curtis's check for a deposit on the car bounced. A Mrs. Ferguson then called the dealership and stated that she worked for the Department of Justice Federal Credit Union and that the money would be transferred to Curtis's account that afternoon. Based on this representation, Curtis's credit application was to be approved upon verification of income. Curtis provided a letter stating that he earned a salary of

3

$96,500 and that he had been employed with the agency since March 1983. Based on the information in this letter, Chrysler approved the credit application and the dealership delivered the car to Curtis. After Curtis's second deposit check bounced, the dealership repossessed the car.

The government also presented evidence that a search of the Department of Justice employee files and its component organizations for an individual named Derek Dion Curtis proved negative. No government agencies named Strategic Analysis and Management Systems or the Office of Congressional Affairs were found. This search did not include FBI records. Also, the Department of Justice Credit Union had no account in the name of Derek Curtis and that no one with the last name of Ferguson was employed there.

To prove a violation of 18 U.S.C.A. § 912, the government must show that the defendant, not an officer or employee of the United States, knowingly and willfully pretended to be an officer or employee of the United States and in that role demanded or obtained something of value. United States v. Guthrie, 387 F.2d 569, 571 (4th Cir. 1967). Curtis contends that the government failed to prove that he was not an officer or employee of the United States and that he pretended to be one. However, Curtis--either personally or through Mrs. Ferguson--represented himself to be a member of the Justice Department or of the Office of Congressional Affairs or a liaison between various governmental agencies. Curtis also represented that his "agency," Strategic Analysis and Management Systems, was a part of the Department of Justice or the Office of Congressional Affairs. Additionally, Curtis supplied the Justice Department Federal Credit Union as a credit reference when applying for credit for the automobile, and he represented that the government would pay for the lease on the house.

Curtis's own testimony supported the conclusion that he did not work for the government. See United States v. Thomas, 52 F.3d 82, 85 (4th Cir.) (entire record, including the defense, may be considered in resolving sufficiency of the evidence), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3246 (U.S. Oct. 2, 1995) (No. 95-5258). Curtis testified that he was working for God to track down drug users and eliminate corruption from the federal government. Further, Curtis admitted that

4

he had previously been convicted of impersonating a federal employee. These statements support the conclusion that Curtis was not a federal employee or officer. Additionally, Curtis's expert witness, Dr. Raifman, testified that Curtis admitted impersonating a federal employee when he committed all of the acts in the indictment.

Because the evidence as a whole, viewed most favorably to the government, was sufficient to prove beyond a reasonable doubt that Curtis was not a government employee and was impersonating a government employee, we affirm Curtis's convictions under 18 U.S.C.A. § 912. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Curtis also contends that the district court erred in finding that the loss exceeded $20,000 because the car--valued in excess of $20,000 --was repossessed by the dealership. The commentary to Guidelines section 2F1.1 references the commentary to § 2B1.1, which provides: "In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle even if the vehicle is recovered immediately." See United States Sentencing Commission, Guidelines Manual, § 2F1.1, comment. (n.7), § 2B1.1, comment. (n.2) (Nov. 1994). Under this provision, it is irrelevant to the determination of the amount of loss that the vehicle was recovered by repossession of it. The inclusion of the full value of the property taken, although recovered, is appropriate. See United States v. Johnson, 908 F.2d 396, 398 (8th Cir. 1990). Finding no error in the district court's determination that the amount of loss exceeded $20,000, we affirm Curtis's sentence.

In conclusion, we affirm Curtis's convictions and his sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5